UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JENNIFER LUCKETT                                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 3:18-CV-275-KHJ-LGI

ALLSTATE INDEMNITY COMPANY                                 DEFENDANT

ORDER

This action is before the Court on Allstate Indemnity Company's Motion for Summary Judgment [137]. After reviewing the arguments, evidence, and applicable law, this Motion is granted in part and denied in part.

I.   Background

A.  Procedural History

This case stems from a house fire on Castilian Springs Road in Durant, Mississippi ("the Castilian Springs house"). Plaintiff Jennifer Luckett ("Luckett") filed a claim for benefits under a renter's insurance policy she bought from Allstate Indemnity Company ("Allstate"). After investigating, Allstate denied Luckett's claim, stating Luckett materially misrepresented her status as a renter, fraudulently requested mileage reimbursement, and breached a policy condition when she failed to produce all requested documents. [143-10].

After the claim denial, Luckett sued Allstate in Holmes County Circuit Court for breach of contract and bad faith breach of contract and Allstate removed the case to this Court. [1-1]. Luckett moved to remand asking the Court to allow her to

certify that she did not seek more than $75,000 in damages. [1-2]. The Court reserved ruling on Luckett's motion and allowed her to submit an affidavit agreeing to not seek an amount greater than $75,000, which would destroy federal diversity jurisdiction. [1-2]. Luckett filed such an affidavit, and the Court remanded the case to state court. [1-3, 4].

Luckett then filed a second Complaint in Holmes County Circuit Court against Allstate and added two individuals: Barry Makamson and Wilbur Jordan, who Luckett identified as agents, employees, and servants of Allstate. [1-5]. The facts and causes of action in the second Complaint are nearly identical to those in the first—both complaints arise out of the same fire loss and cite the same renter's insurance policy.

Luckett moved to dismiss her first lawsuit. [1-6]. The state court granted her motion. [1-7]. Her second lawsuit, like her first, did not specify the amount of damages she sought. Allstate served requests for admissions asking Luckett to admit that the damages sought were no greater than $75,000. Luckett denied that she was not seeking more than $75,000 in her second lawsuit, despite the affidavit she submitted in her first lawsuit. [1-8]. As a result, Allstate removed the second case to this Court based on federal diversity jurisdiction. [1-1]. Luckett moved to remand. The Court denied Luckett's request for remand and dismissed Defendants Barry Makamson and Wilbur Jordan [24]. Allstate is the only remaining Defendant.

Luckett alleges that Allstate breached/tortiously breached the renter's insurance agreement, acted wrongfully and in bad faith, negligently failed to train

and supervise their agents, and acted grossly negligent in denying Luckett's fire loss claim. [1-5]. In its Motion for Summary Judgment, Allstate argues that the renter's insurance policy is void ab initio because Luckett misrepresented material facts when applying for the policy and when filing her insurance claim. [138]. Allstate also claims that Luckett materially breached her obligations under the renter's insurance policy when she refused to provide Allstate with her bank statements during its investigation of Luckett's fire loss claim. *Id.* Luckett responds that the Allstate agent fraudulently prepared Luckett's renter's insurance application. And while Luckett does not dispute that she misrepresented her mileage reimbursement claim, she contends her actions were not a material breach of her renter's insurance policy. [143].

B. Evidence Presented

In the spring of 2013, Shirley Stewart showed Luckett and Luckett's mother the Castilian Springs house. [137-13], at20:5-17. At that time, the house was owned by Margaret Davenport, Ms. Stewart's aunt, who lived in California. [137-13] at 10:23-11:3. Ms. Davenport gave Ms. Stewart permission to rent out the house. [137-13] at 13:3-10. Before 2013, Ms. Stewart rented the Castilian Springs house to at least three tenants, who would usually pay $400 to $500 per month for rent. [137-13] at 14:10-15:1. These tenants paid in cash that Ms. Stewart would pick up from the Castilian Springs house or arrange for the tenants to drop off to her. [137-13] at 16:13-15, 21:17-21.

At some point after Ms. Stewart showed Luckett the Castilian Springs house,

Luckett moved into the house and began paying utilities. [137-13] at 17:18-21; [137-8] at 75-76. On or around May 22, 2015, Luckett bought an Allstate renter's insurance policy ("the Policy") for the Castilian Springs house for $18,000. [137-11] at 15:18-19, 19:2-4. During the application process, Luckett told Allstate that she was renting the Castilian Springs house.[1] [137-3] at 74:24-75:6; [137-1] at 39:15-17. This policy was the first time that Luckett had ever bought renter's insurance, and she had no other insurance policies with Allstate. [137-1] at 50:2-7; [137-11] at 29:16-18. About eight days after Luckett bought the insurance, she increased coverage from $18,000 to $40,000. [137-2]; [137-5] at 6-10.

Under the policy terms, Allstate agreed to pay for a covered loss of personal property up to the limit on liability if Luckett satisfied the policy conditions. Luckett had to provide all accounting records, bills, invoices, and other vouchers or certified copies, which Allstate reasonably requested to examine, and to submit to examinations under oath and sign a transcript of this examination. [137-2] at 25. Allstate also agreed to cover additional living expenses Luckett incurred if the covered property was uninhabitable because of a direct physical loss. [137-2] at 23. Allstate did not agree to cover any loss in which Luckett concealed or misrepresented a material fact or circumstance. [137-2] at 18. Neither "misrepresentation" nor "concealment" is defined in the policy. [137-5] at 47:18-48:18.

---

[1] Luckett argues that neither the application nor the Allstate agent asked if she was renting the Castilian Springs house. [143] at ¶ 6. This is contradicted by Luckett's 2015 examination under oath and her 2020 deposition. [137-3] at 74:24-75:6; [137-1] at 39:15-17.

In the early morning of June 9, 2015, the Durant County Fire Department responded to a call about a fire at the Castilian Springs house. [137-15]. The fire department declared the house a total loss. *Id.* Later, Luckett submitted a claim against Allstate for the value of the personal property that the fire destroyed. Luckett also submitted a request for mileage reimbursement, claiming that she drove to and from her place of employment, Canton Public School District, during the summer of 2015. [137-3] at 66:24-67:9. Luckett, however, did not work at Canton Public School District during the summer of 2015. [137-3] at 11:7-17; [137-1] at 17:2-9.[2]

During its investigation, Allstate requested Luckett's bank statements, credit card statements, pay stubs, invoices, receipts, tax statements, and any other evidence showing income, expenses, or the value of the personal property that the fire destroyed. [137-6]. Luckett produced some, but not all, of the requested documents. [137-1] at 70:3-11; [137-5] at 46:11-47:15. In her September 17, 2015 examination, Luckett told Allstate she had a SunTrust bank account, but she did not produce any bank statements from SunTrust. [137-3] at 19:8-11; [137-5] at 23:2-20.

After its investigation, Allstate denied Luckett's claim because she breached the policy's concealment clause and the requirements for what an insured must do

---

[2] Luckett mentions in her response to Allstate's summary judgment motion that she may have traveled to work for a reason which did not warrant a time stamp in her time sheet but has cited no evidence to support this allegation. Luckett stated in her examination under oath and her deposition, however, that she did not work at school during the summer of 2015 and that there would not be any reason besides work for her to go to school. [137-3] at 11:7-17; [137-1] at 17:2-9.

5

after a loss. Allstate stated that Luckett misrepresented her status as a renter of the Castilian Springs house, overstated the value of the property damaged by the fire, submitted claims for losses which Luckett did not incur, and failed to produce all documents requested by Allstate. [137-8] at 28-29. Feeling aggrieved, Luckett sued.

Luckett's status as a renter is disputed. Luckett claims she entered into an oral rental agreement with Ms. Stewart after touring the house. [137-1] at 25:25-27:4. She also claims Ms. Stewart told her that she could move in if she did necessary repairs and improvements on the house. [137-1] at 26:21-27:4. Luckett states that she paid for these repairs and paid $400 to $500 per month in rent by leaving cash for Ms. Stewart at Luckett's mother's house or giving cash directly to Ms. Stewart at the Castilian Springs house. [137-1] at 34:20-35:1; [137-3] at 14:2-17, 24:14-25. Luckett admits that she stopped paying rent when she learned the house was in foreclosure. [137-1] at 35:8-36:4.

Luckett's mother's testimony both confirms and contradicts Luckett's testimony. Her mother testified that Luckett and Ms. Stewart reached an agreement for Luckett to move into the Castilian Springs house during the initial showing. [137-12] at 19:22-21:14, 23:12-19. Luckett's mother also testified that Ms. Stewart allowed Luckett to make repairs and improvements to the house prior to moving in and that Luckett made these repairs.[3] [137-12] at 18:24-19:7, 24:13-25:4.

---

[3] The extent of these repairs is disputed. Luckett claims that she cleaned the house, replaced the bathroom floor, replaced wall paneling, repainted, and put in new carpet. [137-3] at 16:24-17:7. Luckett's mother claims that Luckett only cleaned the house, pulled up all the carpet, and replaced wall paneling. [137-12] at 25:10-26:24.

6

Luckett's mother denied any knowledge of an arrangement between Luckett and Ms. Stewart involving rent money. [137-12] at 8:21-9:10, 29:20-30:7. Luckett's mother also testified that Luckett learned the Castilian Springs house was in foreclosure while Luckett was living in the house. [137-12] at 50:22-51:8.

Ms. Stewart disputes Luckett's testimony. She says that Luckett and her mother toured the Castilian Spring house, but the parties never reached an agreement for Luckett to move into the house. [137-13] at 20:5-17, 27:12-15. Ms. Stewart also claims she never collected any rent from either Luckett or Luckett's mother. [137-13] at 25:25-26:8. She admits she knew Luckett had moved into the house and claims that she was trying to evict Luckett when the fire occurred. [137-13] at 32:2-15.

There is also conflicting evidence about whether Luckett overstated the value of the personal property that the fire destroyed. Luckett requested reimbursement for almost $31,000 of personal property that she claimed to have bought during the two years before the fire. [137-8] at 52-68; [138] at 19. Adding up the income from Luckett's tax returns, Allstate asserts that Luckett's average income from 2012-2015 was $12,099.33. [138] at 19. Allstate claims this is direct evidence showing Luckett overstated the value of her property. That said, Luckett claims her mother and sister bought some items the fire destroyed. [137-3] at 98:1-4, 99:25-100:3, 101:17-20, 102:7-11, 104:19-105:3, 125:1-4. Luckett's mother denies purchasing anything for her daughter. [137-12] at 44:23-46:15.

II.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013) (citation omitted).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

III.   Analysis

Federal courts sitting in diversity jurisdiction must apply the forum state's substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). For that reason, this Court will look to the substantive law of Mississippi to resolve the substantive legal issues presented.

Allstate argues that Luckett breached the renter's insurance policy in several ways. First, Allstate asserts that Luckett violated the policy's concealment clause when Luckett misrepresented: (1) that she drove to and from work during the

summer of 2015, (2) her status as a legal renter of the Castilian Springs house, and (3) the value of Luckett's property that the fire destroyed. Allstate also argues Luckett breached the terms of the renter's insurance policy by failing to produce all documents Allstate requested.

Allstate also seeks summary judgment on Luckett's tortious breach of contract, gross negligence, and bad faith claims, arguing that there is no evidence Allstate acted recklessly or committed an intentional wrong in its investigation denying Luckett's claim. Finally, Allstate seeks summary judgment on Luckett's negligence claim, arguing that Allstate did not violate a legally recognized duty by denying her claim. This Court will address each of these arguments in turn.

### A. Breach of Contract

Allstate argues that Luckett failed to sufficiently plead breach of contract. But Luckett explicitly alleges that Allstate "breached the contractual homeowner's insurance agreement" and that "[a]s a result, [Luckett] sustained injuries." [1-5]. The Complaint sufficiently notifies Allstate of a breach of contract cause of action, especially given breach of contract is a necessary element of tortious breach of contract. *Robinson v. S. Farm Bureau Cas. Co.*, 915 So. 2d 516, 520 (Miss. Ct. App. 2005); *see also Maness v. K & A Enters. of Miss.*, 250 So. 3d 402, 414 (Miss. 2018) (defining breach of contract as (1) the existence of a valid contract and (2) a breach of the contract).

On the merits, Allstate says that it properly denied Luckett's claim because Luckett breached the renter's insurance agreement when she violated the policy's

9

concealment clause and the clause governing what an insured must do after a loss. Concealment clauses entitle an insurer to know all facts that are material to the insurer's rights so that the insurer can decide upon its obligations and protect itself against false claims. *Edmiston v. Schellenger*, 343 So. 2d 465, 466-67 (Miss. 1977). To establish that an insured has breached the concealment clause of an insurance contract, an insurer must show by a preponderance of evidence that the statements by the insured were false, material, and knowing and willfully made. *McCord v. Gulf Guar. Life Ins. Co.*, 698 So. 2d 89, 92 (Miss. 1997).

Courts interpret materiality broadly and look to whether a fact was material when the insured made the representation. *Edmiston v. Schellenger*, 343 So. 2d 465, 466-67 (Miss. 1977). A false statement is material if the truth probably or reasonably would have affected the insurer's decision to execute the agreement or if the truth prevented the insurer from investigating or pursuing a valid legal defense to the contract. *See Sanford v. Federated Guar. Ins. Co.*, 522 So. 2d 214, 217 (Miss. 1988); *Edmiston*, 343 So. 2d at 467; *see also* Material Misrepresentation, Black's Law Dictionary (11th ed. 2019) (defining material misrepresentation as "[a] false statement that is likely to induce a reasonable person to assent or that the maker knows is likely to induce the recipient to assent").

Termination of a contract, however, is only appropriate where: (1) a party materially breaches a contract such that the party fails to substantially perform an essential part of the contract; (2) the breach substantially defeats the purpose of the contract; or (3) the breach is vital to the existence of the contract. *UHS-Qualicare,*

10

*Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 756 (Miss. 1987). Whether a party materially breached a contract is generally a question of fact. *Sanford*, 522 So. 2d at 217.

### 1. Luckett's false mileage claim

Luckett admits that she filed a claim for mileage reimbursement to and from her job in June 2015. [137-3] at 66:24-67:9. Luckett also admits that she did not work during the summer of 2015 and that she would not have any reason to travel to work when she was not working. [137-1] at 17:2-9. As a result, this Court finds that Luckett's mileage reimbursement claim was based, at least in part, on a false statement. The Court must now consider whether this misrepresentation was material when Luckett filed her claim for additional living expenses.

Allstate argues Luckett's misrepresentation is material because Allstate relied on Luckett's misrepresentation to reimburse her for additional living expenses. Luckett asserts this misrepresentation is not material to the entire insurance contract to render it void. Although Luckett's misrepresentation was material to her claim for additional living expenses, the Court must consider whether this misrepresentation was material to Luckett's claim for personal property damage—the basis of this lawsuit.

Allstate cannot claim that but for Luckett's misrepresentation it would not have issued the renter's insurance policy. *Sanford*, 522 So. 2d at 217. When Luckett filed her mileage claim, Allstate had already issued the renter's insurance policy and was in the middle of its investigation. Since Luckett's misrepresentation came

11

after Allstate issued the renter's insurance policy, Allstate could not have reasonably relied on this statement to issue the policy.

Additionally, Luckett's false claim for mileage did not prevent Allstate from investigating any defenses to Luckett's claim for personal property damage. Allstate relies on *Edmiston* to show that Luckett's misrepresentation was material. 343 So. 2d at 466. There, the insured lied about where he was in the days following a fire that destroyed the insured's property. *Id.* The court found this information material because the misrepresentation prevented the insurance company from investigating the cause of the fire. *Id.* at 467. Here, unlike in *Edmiston*, Luckett's mileage misrepresentation did not prevent Allstate from investigating the cause of the fire or pursuing any valid defenses. Therefore, although Luckett's misrepresentation is material to her claim for additional living expenses, it is not material to Luckett's claim for personal property damage. And even if the misrepresentation were material to Luckett's claim for property damage, whether this misrepresentation constitutes a material breach of the insurance contract is a question of fact. *Sanford*, 522 So. 2d at 217. This Court denies summary judgment on this ground.

### 2. Luckett's legal status as a renter

Allstate argues that other witnesses contradict Luckett's testimony about her rental of the Castilian Springs house. Luckett admits she told Allstate she was renting the Castilian Springs house when she bought the renter's insurance policy. [137-1] at 39:15-17; [137-3] at 74:24-75:6. She and her mother both testified Luckett entered into an oral agreement with Ms. Stewart to rent the house and Ms. Stewart

encouraged Luckett to make repairs to the house in exchange for occupying the house. [137-1] at 25:25-27:4; [137-12] at 18:24-19:7, 19:22-21:14, 23:12-19, 24:13-25:4.

Although Allstate points to several inconsistencies in the record, evaluating conflicting evidence to determine whether a contract exists is a question of fact for the jury to decide. *Jackson HMA, LLC v. Morales*, 130 So. 3d 493, 497-98 (Miss. 2013). Because Luckett and her mother testified that Luckett entered into an oral agreement to move into the Castilian Springs house in exchange for repairing the house and that Luckett made these repairs, the Court finds that a genuine issue of material fact exists as to whether an oral rental agreement existed and denies summary judgment on this ground.

3. Luckett's financial condition and property value

Allstate argues that Luckett overstated the value and the age of her personal property when making her property damage claim. There is conflicting evidence about who bought several of Luckett's listed items. Luckett claims that her mother and sister bought several of the listed items, but Luckett's mother denies having purchased any items for Luckett's home. [137-3] at 98:1-4, 99:25-100:3, 101:17-20, 102:7-11, 104:19-105:3, 125:1-4; [137-12] at 44:23-46:15. Because the Court cannot consider witness credibility and must view the evidence in the light most favorable to Luckett for purposes of summary judgment, *N. Assur. Co. of Am.*, 722 F.3d at 303, the Court finds that there is a genuine issue as to whether Luckett overstated the value of her personal property.

          4.      Luckett's refusal to provide all documents Allstate requested

Allstate claims that Luckett violated the policy term that required Luckett to give "all accounting records, bills, invoices and vouchers, or certified copies which we may reasonably request to examine." [137-8], at 29. To determine whether Luckett breached the contract, this Court must determine whether Allstate's request for Luckett's bank accounts was reasonable. "[R]easonableness is a question of fact[,]" however, and, as such, must be submitted to a jury. *Hawkins v. Heck Yea Quarter Horses, LLC*, 249 So. 3d 400, 405-06 (Miss. 2018).

Even if Allstate's request were reasonable as a matter of law, there is a genuine issue as to whether Luckett materially breached the insurance contract. Luckett produced at least some of the requested documents, and she claims that she complied with Allstate's request in good faith. In contrast, though, Luckett admitted to having a SunTrust bank account in 2015 yet did not produce her bank statements from this account. Allstate claims this is a material breach of the contract because bank statements could document other sources of income and document purchases made with a debit card or by check. These are questions of fact that the Court cannot resolve at this stage of litigation, especially when viewing the evidence in the light most favorable to Luckett. *Sanford*, 522 So. 2d at 217. The Court therefore denies summary judgment on this ground.

    B.  The Remaining Claims

Allstate is entitled to summary judgment on Luckett's remaining claims for tortious breach of contract, bad faith, gross negligence, and negligence. Tortious

breach of contract occurs when a party breaches a contract with an "intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort." *Robinson*, 915 So. 2d at 516. Because Luckett has presented no evidence showing Allstate's conduct in its investigation or denial constitutes an independent intentional tort, this Court grants summary judgment for Allstate on Luckett's tortious breach of contract claim.

A claim for bad faith requires that an insurer lacked an arguable basis for denying the claim, committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003). Allstate had an arguable basis to deny Luckett's claim—the belief that Luckett had misrepresented her status as a renter—and Luckett has presented no evidence that Allstate committed a willful or malicious wrong or acted with gross and reckless disregard for her rights. The Court therefore grants summary judgment for Allstate on Luckett's bad faith claim.

Gross negligence occurs when a party acts recklessly indifferent to consequences without making any substantial effort to avoid these consequences. *Ezell v. Bellsouth Telecomms., Inc.*, F. Supp. 149, 152 (S.D. Miss. 1997) (quoting *Dame v. Estes*, 101 So. 2d 644 (Miss. 1958)). Luckett has presented no evidence that Allstate acted with reckless indifference in its investigation or denial of her claim. On the contrary, Allstate conducted several witness interviews and requested multiple documents relating to Luckett's claim. As a result, this Court cannot find that Allstate acted with reckless indifference. The Court therefore grants summary

15

judgment for Allstate on Luckett's gross negligence claim.

A party who seeks to establish ordinary negligence must show that a defendant breached its duty of care to the plaintiff and this breach injured the plaintiff. *Sanderson Farms, Inc. v. D. D. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). Every contract comes with a common law duty of care, skill, and reasonable experience. *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015). There is no genuine issue, however, as to whether Allstate breached this duty in denying Luckett's claim under the rental insurance agreement. Luckett declined to even address Allstate's ordinary negligence argument and has presented no facts showing Allstate failed to act with care, skill, and reasonable experience in denying her claim. This Court therefore finds no genuine issue of material fact exists for Luckett's negligence claim, and summary judgment is appropriate.

IV. Conclusion

This Court has considered all arguments. Those not explicitly addressed in this Order would not have changed the outcome. Because material facts are in dispute, Allstate's Motion for Summary Judgment [137] is DENIED on this claim:

- Breach of contract.

Because there are no material facts in dispute, Allstate's Motion for Summary Judgment [137] is GRANTED on these claims:

- Tortious breach of contract,
- Bad faith,
- Gross negligence, and

16

- Negligence.

SO ORDERED AND ADJUDGED this the 11th day of February, 2021.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE
